Number 171688 United States v. Jonathan Antonio Gonzalez-Barbosa May I please support? I would like to reserve one minute for rebuttal if possible, Your Honor. Yes, of course. My name is Marie Cortez. I represent Mr. Jonathan Gonzalez-Barbosa. I would like to start first by addressing the issue of sentence disparity. The sentence that Mr. Gonzalez-Barbosa received is significantly higher compared to the sentence imposed to an equally situated defendant. And I'm referring specifically to his co-defendant, Number 8, Mr. Roderick Perez. I submit that Roderick Perez and Gonzalez-Barbosa are equally culpable defendants for purposes of our argument on sentence disparity. These two defendants were charged with the same counts in the same indictments. They were attributed the same roles as leaders of the conspiracy, specifically as drug point owners. These defendants entered into plea agreements in which the same quantity or amount of narcotics was stipulated by the parties in the amount of at least 500 grams, but not less than 2 kilograms of cocaine. But you're leaving out the weapons enhancement that Gonzalez-Barbosa did not. Do you want to address that? Do you mean the two points enhancement in the calculation of the guidelines? Well, Your Honor, the situation is that the U.S. Probation Office identified that that enhancement was appropriate in the particular case of Mr. Gonzalez-Barbosa. I do not know if in the specific case of Mr. Perez, that situation was addressed by the court and assigned by the U.S. Probation Office in the PSR pertaining to Mr. Perez. What I do know is that Mr. Roderick Perez was assigned the role of enforcer in a previous phase of the conspiracy, particularly as charged in Criminal Case 10-246. And in the present case, Mr. Roderick Perez was also charged with a 924C count, as the same as Mr. Gonzalez. So whether that enhancement in the calculation of the sentencing guidelines was an issue or not, I do not know. However, what I do know also is that both plea agreements recommended a sentence of 72 months for these defendants who were charged with a 924C, who had been in the previous indictment of the conspiracy that took place or was taking place at the same public housing project, Columbus Landing. And both of these defendants were serving their supervised release term when they were arrested and brought, in this case, for the conspiracy charge in year 2016. Counsel, maybe we shouldn't read too much into your choices of argument and oral argument, but I'm somewhat surprised that you're not focusing on what I took to be the primary argument in your brief, that there was an error in the criminal history category for your client. Would you, do you care to address that? Oh, yes, Your Honor. Now, moving forward to the issue of the criminal history category of my client, we submit that it was wrongly calculated. And basically what we proposed in our brief was that this error in the calculation of his criminal history was when the U.S. Probation Office assigned three points for the sentence that he obtained or got in criminal case 10-246, and two additional points for having returned to the conspiracy while serving the supervised release term. What we say is that in both cases, there is the same, we're talking about the same conspiracy, which is a large conspiracy that started in year 2002. Counsel, it's striking. I don't think you cited any authority at all for the proposition that you were trying to assert. I mean, this was a, he was sentenced. He completed his sentence. There was a subsequent arrest. There's not appeared to be any time overlap between that earlier conspiracy and the later conspiracy. His role was different. I just don't understand what the logic or the authority is for saying that that earlier conviction should not count towards his criminal history category. I should clarify, Your Honor, that I don't have the, I didn't identify any authority in that specific matter. But what we tried to do was to bring up as an issue a case where you have a conspiracy that was charged twice, and that it has over, both have overlaps in terms of the location where the conspiracy was taking place, in terms of the modus operandi of the conspiracy, which was distributing and selling narcotics, the same narcotics that were being sold at the public housing project, the roles that were assigned to the co-conspirators of the conspiracy, as leaders, runners, sellers, enforcers. And also, in terms of time, when the second, when the prosecutor filed the second indictment, you can see that there is an overlap in terms of the time. Because the second indictment indicates that that conspiracy, that for us is a sequel of the conspiracy, started in July, in year 2010, until the filing of the indictment, which was in July, on July 19th of year 2016. So our proposition is that... Counsel, I mean, there are striking similarities between what he did before, resolving any conviction, and the criminal conduct that he renewed when he got out again. But those are different criminal events, similar in detail, but they are different episodes, it seemed to me. We would say, Your Honor, that it's similar episodes of the operations and participation in the same drug trafficking organization and operation, in general. But also, Mr. González Barbosa returned home. He returned to the place that he knew, to the people that he knew, and the drug point was operating when he returned. And he newly joined that operation. So what I'm trying to say is that, for example, the two points that were calculated, in terms of his violation of the supervised release, it's related, of course, to... My time is up. You can finish. Thank you, Your Honor.  And the reality is that if Mr. González would have committed a different offense, say, for example, a robbery, or if he had distributed and sold drugs in another location, well, the three points for that conviction and sentence would be well counted. That's my proposition. Thank you. Good morning. Chief Justice Howard, and may it please the Court. Antonio Perez on behalf of the United States. The district court's sentence in this case should be affirmed because it was both procedurally and substantively reasonable. The district court correctly calculated the applicable guideline sentencing range and proceeded to give a sentence well within that range after considering the 3553 factors and any mitigating factors. I'd like to start by addressing Mr. González Barbosa's first claim of procedural unreasonability. The district court did not commit error, much less error that was clear or obvious, in counting Mr. González Barbosa's prior federal conviction as part of his criminal history. The relevant inquiry in this case is whether that prior drug trafficking offense constituted relevant conduct under Section 1B.1.3 of the sentencing guidelines. And that provision states that if that prior offense were part of the same course or conduct or common scheme or plan as the offense of conviction, it would thus constitute relevant conduct. We then look to the commentary, which provides the exact answer in this case, which is that because there was an intervening arrest and an intervening sentence before Mr. González Barbosa started in any of the conduct that was part of the instant offense, it is not relevant conduct under 1B.1.3. And the relevant comment is comment 5C, conduct associated with a prior sentence, which provides that offense conduct associated with a sentence that was imposed prior to the acts or omissions constituting the instant federal offense is not considered as part of the same course of conduct or common scheme or plan as the offense of conviction. That is exactly what happened here. Mr. González Barbosa participated in a drug trafficking conspiracy. In the 2002 drug trafficking conspiracy, he was arrested, he was sentenced, he served his sentence, and when after he served his sentence, he participated in a new drug trafficking conspiracy. In fact, the example in that comment gives basically almost the exact same situation as here, where the example states that a defendant is convicted for the sale of cocaine and sentenced to state prison. Immediately upon release, he again sold cocaine to the same person using the same accomplices and modus operandi. But the example states that in this example, offense conduct relevant to the state prison sentence is considered as prior criminal history, not as part of the same course of conduct or common scheme or plan as the offense of conviction. That is exactly what happened here, and the sentencing guidelines provide a clear answer, and that is that the court correctly used his prior sentence for purposes of his criminal history and not as relevant conduct. So the court did not commit error, much less error that was clear or obvious. As for Mr. González Barbosa's claim of sentencing disparity, I'd like to address particularly – well, first of all, I'd like to state that sentencing disparities are mainly concerned with a sentencing disparity nationwide, and Mr. González Barbosa does not provide any evidence to show that his sentence created a disparity with similarly situated defendants nationwide. In addition, as to his contention specifically comparing his sentence to Mr. Roderick Perez-González, Mr. González Barbosa was actually indicted as a drug point owner and as a runner in the current conspiracy. And that was in the PSR, which he did not object to. Mr. Perez-González was not a runner. He was just a drug point owner. In addition, as Chief Judge Howard pointed out, the main difference between these two co-defendants was that Mr. Perez-González received a two-point weapons enhancement at sentencing, and Mr. Perez-González did not. And Mr. González Barbosa is not contesting that that two-point weapons enhancement should not have been given to him on appeal. And so that argument would be waived. And so there is a material difference between Mr. González Barbosa and Mr. Perez-González, which was that two-point weapons enhancement. If I were going to look at the PSRs in the cases of Bolta and Perez, are there any other co-defendants or relevant defendants whose PSRs I should also look at to get the full picture? Or would just those two do it for purposes of the arguments made in this case? In terms of evaluating... I'm going to go look at records. I want to know which records you think I should look at. I think by looking just at Mr. González Barbosa's and Mr. Perez-González's records, I think would be sufficient because it's sufficient to see that there's material difference. Well, I'm going to look at Bolta's too, the other co-defendant. Okay. Okay, well, let me address... Is there anyone else that I should be looking at? It's just a logistical question. I'm trying to save some time when we do the research. I don't believe so, Your Honor. Okay. Counsel, I thought the logic of your argument was that just looking at co-defendants, that's not really relevant. It's only national disparities. Is that what you were saying? I would say that a sentencing disparity is mainly concerned with national disparities. But you would acknowledge that we have precedents in which we have looked at sentencing disparity among co-defendants, would you not? Yes, that is correct. That is correct. But that is the exception rather than the rule. And when we have looked at specific co-defendants, this Court has repeatedly said that you must compare apples to apples. And if there are material differences between the co-defendants that explain the sentencing disparities, then there wouldn't be a reversible error. In any case, to the extent that there was any error, any error was not clear or obvious under the plain error standard, which Mr. González Barbosa concedes applies in this case. Another material difference between Mr. Pérez González and Mr. González Barbosa that I'd like to point out, Mr. Pérez González was released from his prior federal conviction in October of 2015, whereas Mr. González Barbosa was released in November of 2014. So Mr. González Barbosa's participation in the conspiracy was almost one full year more than Mr. Pérez González. And lastly, just to address the issue of substantive reasonability, after the Court correctly calculated the guideline sentencing range from 87 to 108 months, the Court proceeded to evaluate Mr. González Barbosa's specific factors, in particular pointing out that this was Mr. González Barbosa's second conviction for engaging in a drug trafficking conspiracy and that his role actually increased from the prior conspiracy when he was just a seller and now he was a leader and a drug point owner, and that he had the opportunity to rehab, but instead he chose to reengage in criminal activity. The Court also made reference to two Facebook postings that he made while in prison, indicating that he had access to illegal devices. And so we would submit, and so she sufficiently explained that a sentence in the middle range of the applicable guidelines was appropriate in this case. At this point, I'd like to pause for any questions. Thank you. Thank you, Your Honor. May I, Your Honor? Yes. Very briefly, yes, there is precedent from this Court addressing co-defendants' disparity issues in the same case. Particularly U.S. v. Reyes-Santiago, 804 Federal Serve 456. Also, even though the PSR identifies Mr. González Barbosa as a drug point owner and also as a runner, it also identifies Axel Volta, who is Defender Number 10, as a runner as well. And we submit that also in terms of the conspiracy, the government may well... Continue. The government may well tomorrow file a third indictment for the same location, same roles, same drug trafficking operation. And it can even do so within a year or two years. And we will be here defending or representing other defendants in those cases who were probably indicted in the original indictment of year 2010 or even the indictment of year 2016. That would be all, Your Honor. I ask permission to withdraw. All right. Thank you.